IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ | ) | |
| FIREMAN'S FUND RISK MANAGEMENT | ) | |
| SERVICES, INC., ASSOCIATED INDEMNITY | ) | |
| CORPORATION, and THE AMERICAN | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CASE NO. 04-11212 NG |
| v. | ) | |
| | ) | |
| AJF WAREHOUSE DISTRIBUTORS INC. | ) | |
| and XTRA CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## DEFENDANTS' PRETRIAL MEMORANDUM

Defendants, AJF Warehouse Distributors Inc. and Xtra Corporation (hereinafter

collectively referred to as "Xtra") submit this Pretrial Memorandum.[1]

## I.    TRIAL COUNSEL FOR DEFENDANTS.

Jeffrey W. Moss
Morgan, Lewis & Bockius LLP
225 Franklin Street, Suite 1705
Boston, Massachusetts   02110
Tel:    617.451.9700
Fax:    617.451.9710
Email: jmoss@morganlewis.com

## II.    WHETHER THE CASE IS TO BE TRIED WITH OR WITHOUT A JURY.

The parties have each requested a trial by jury.

---

[1]     The parties have been engaged in substantive settlement discussions.  In the event the parties have not reached a settlement in principle prior to the pretrial conference, counsel have agreed to further meet and confer regarding the narrowing of issues for trial, including a proposed stipulation of acts, stipulated trial exhibits, proposed joint description of the case and jury instructions.  The parties will be prepared to report to the Court the status and prospects of settlement at the pretrial  conference.

III.    **SUMMARY OF XTRA'S POSITION.**

This is a breach of contract action brought by plaintiffs against Xtra relating to a settlement agreement and release entered into by the parties in 1998. Fireman's Fund asserts they are owed a retrospective premium based on the amount plaintiffs paid to Xtra in connection with that settlement. Fireman's Fund filed a complaint in Suffolk Superior Court against Xtra on February 17, 2004, nearly six years after this settlement, seeking to recover damages in the amount of $214,232.00 for the alleged unpaid premium.

Xtra timely filed a Notice of Removal to the United State District Court based on diversity jurisdiction, 28 U.S.C. 1332. Xtra then filed a motion to dismiss asserting, among other things, that the 1998 settlement agreement had fully resolved all claims then existing or which in the future may exist between the parties relating to the matter that was the subject of the settlement agreement. By Order dated October 6, 2004, the Court denied Xtra's motion to dismiss, concluding that "the 1998 agreement -- on this record -- is ambiguous as to whether the Fireman's Fund claim is barred."

Xtra thereafter filed an answer to the complaint asserting various defenses. In addition, Xtra filed a counterclaim against plaintiffs asserting six (6) causes of action: (1) declaratory judgment; (2) breach of the settlement agreement; (3) breach of the covenant of good faith and fair dealing; (4) misrepresentation; (5) rescission; and (6) unfair competition-violation of G.L. c. 93A.

Xtra asserts that the 1998 settlement agreement fully resolved all claims between the parties, including any claim for a retrospective premium that might have accrued on the settlement. Xtra asserts that Fireman's Fund's demand for a premium based on the 1998 settlement constitutes a breach of the settlement agreement. Xtra also asserts that Fireman's Fund has incorrectly calculated the premium amount.

Xtra further asserts that during the course of good faith settlement negotiations, Fireman's Fund deliberately and actively concealed their intention to seek payment of a retrospective premium on any settlement, knowing that such disclosure would have resulted in a less favorable settlement outcome, if any, for plaintiffs.  Xtra asserts that Fireman's Fund's nondisclosure constitutes a willful breach of the implied covenant of good faith and fair dealing and was made with the intent to deceive, all of which are fact determinations to be made by the jury.  If the jury finds that the nondisclosure was willful, Xtra will ask the Court to award Xtra treble damages and attorneys' fees.

IV.    **XTRA'S PROPOSED STIPULATED FACTS.**

1.    Fireman's Fund Insurance Company is a California corporation with its principal place of business in Novato, California.  Fireman's Fund is in the business of selling insurance.

2.    Xtra Corporation is a Delaware corporation with its principal place of business in St. Louis, Missouri.  Xtra is a global transportation lessor whose clients include railroads, shipping lines and trucking companies.

3.    The Frederick E. Penn Insurance Agency is an independent insurance agency having its principal place of business in Needham, Massachusetts. The Penn agency was Xtra's insurance broker at all times relevant to this present dispute.

4.    Fireman's Fund and Xtra entered into six insurance contracts effective pursuant to their terms for the period October 1, 1978 -- October 1, 1984. These policies provided coverage for, among other things, property damage taking place during their policy periods.

5.      In December 1990, the Wisconsin Department of Natural Resources notified Xtra that it was a potentially responsible party with respect to property damage at the Highway Trailer site located in Edgerton, Wisconsin.

6.      In February 1991, the Wisconsin Department of Natural Resources notified Xtra that it was a potentially responsible party with respect to the Edgerton Sand & Gravel Landfill site, also located in Edgerton, Wisconsin.

7.      Following these notices and demands by the State of Wisconsin, Xtra notified its insurers of these demands and requested that the insurers provide Xtra with a defense and, if necessary, indemnify Xtra for any monies paid to the State of Wisconsin to address the State's concerns.

8.      Xtra notified Royal Indemnity Company, Federal Insurance Company, Providence Washington Insurance Company and Fireman's Fund Insurance Company.  All of these insurers had issued insurance coverage to Xtra that was potentially responsive to the State of Wisconsin's claims for property damage.

9.      The insurers refused to defend or indemnify Xtra.  Xtra therefore settled the State of Wisconsin and sought reimbursement from its insurers.

10.     In February 1993, Xtra filed suit against all of its insurers seeking a declaration of its rights under the policies issued by its insurers with respect to the claims brought by the State of Wisconsin against Xtra.

11. In 1995, after having settled the State of Wisconsin, Xtra settled its suit against its insurers, including Fireman's Fund, for reimbursement of some of the monies Xtra paid to defend itself against the State of Wisconsin's claims.

12. In October 1994, 241 individuals who were either permanent or summer residents in an area located south of the Edgerton Sand & Gravel Landfill filed suit against Xtra and several other defendants. This suit was known as the *Alderman* Action. The *Alderman* Action alleged that materials disposed at the landfill by various parties, including Xtra, had damaged the plaintiffs' drinking wells.

13. Shortly after receipt of the *Alderman* Action, Xtra notified its insurers of this action and requested a defense of this suit and indemnification, if necessary, for any judgment or settlement entered against Xtra.

14. In January 1995, one of Xtra's insurers, Royal Indemnity Company, filed suit against Xtra and Xtra's other insurers seeking a declaration that Royal had no duty to defend or indemnify Xtra in the *Alderman* Action.

15. In response, Xtra counterclaimed against Royal and cross-claimed against the other insurers, including Fireman's Fund for breach of contract and for a declaration that the insurers had a duty to defend and indemnify Xtra in the *Alderman* Action. Xtra also sought extra contractual relief as a result of the insurers' bad faith refusal to defend or indemnify Xtra in the *Alderman* Action.

16. In March 1996, Xtra settled the *Alderman* Action with all of the residents.

17.    Xtra then demanded that its insurers pay and reimburse Xtra its defense and settlement costs incurred in connection with the *Alderman* Action, as well as its attorneys' fees incurred in seeking coverage from its insurers for the *Alderman* Action.

18.    In September 1997, Xtra and its insurers, Royal, Federal and Fireman's Fund, participated in a mediation with a retired State Supreme Court Justice in Milwaukee, Wisconsin in an attempt to settle Xtra's insurance claims relating to the *Alderman* Action.  This mediation was not successful.

19.    During the course of the mediation, the purported retrospective premium obligation was never raised by Fireman's Fund during settlement discussions.

20.    Xtra's settlement demand to its insurers at that time was $1,349,204.  This demand consisted of the (a) cost of settlement of the *Alderman* Action; (b) attorneys' fees incurred in defending the *Alderman* Action; (c) attorney's fees incurred in defending the Royal coverage action; and (d) statutory interest.  The demand did not include punitive damages which were also sought by Xtra against its insurers.

21.    On December 11, 1997, Xtra's and Fireman's Fund's representatives met in San Francisco to further discuss resolution of Xtra's insurance claims. Fireman's Fund did not disclose to Xtra that any settlement reached between the parties would be subject to a retrospective premium.

22.     On January 26, 1998, a settlement in principle was reached between Xtra, Royal and Fireman's Fund whereby Royal and Fireman's Fund collectively agreed to pay $900,000 to Xtra in settlement of all of Xtra's claims against these insurers.  Fireman's Fund did not inform Xtra that it intended to collect a premium from Xtra on Fireman's Fund's share of the settlement.

23.     Fireman's Fund never disclosed to Xtra during the course of settlement negotiations that it intended to seek a premium on any monies paid to Xtra to settle Xtra's insurance claims.

24.     In February 1998, Xtra, Royal and Fireman's Fund executed a settlement agreement and release and the coverage action was dismissed with prejudice as to these parties and the claims that had been asserted by and against one another.

## V.    STATEMENT OF CONTESTED FACTS.

1.     Whether the facts support the conclusion that any of the insurance policies issued by Fireman's Fund to Xtra were still subject to a retrospective premium.

2.     Whether the facts support the conclusion that the 1998 settlement agreement permits plaintiffs to seek a retrospective premium.

3.     The proper method and calculation of the retrospective premium.

4.     The amount of the retrospective premium.

5.     Whether the facts support the conclusion that Fireman's Fund breached the covenant of good faith and fair dealing.

6.      Whether the facts support the conclusion that Fireman's Fund employed an unfair or deceptive act or practice in violation of G.L. c. 93A.

## VI.    <u>JURISDICTIONAL QUESTIONS</u>.

There are no jurisdictional issues.  This Court has original jurisdiction pursuant to 28 U.S.C. § 1332, and, pursuant to 28 U.S.C. § 1446(a), venue is proper in this District because the Suffolk Superior Court, where this action was originally filed and had been pending prior to removal, is a state court within this federal district and division.

## VII.   <u>ISSUES OF LAW</u>

Plaintiffs have recently suggested that they may seek recovery of alleged premiums for other claims payments unrelated to the 1998 settlement.  Xtra objects to any attempt by plaintiffs to insert additional claims in this litigation.  The complaint, amended complaint and discovery conducted in this case has been limited to the 1998 settlement and the relief sought has been limited to this claim.  Xtra will prepare a motion *in limine* as appropriate in the event plaintiffs attempt to pursue any claims other than their claim for a retrospective premium based on the 1998 settlement.

## VIII.  <u>AMENDMENTS TO THE PLEADINGS</u>.

None.

## IX.    <u>ADDITIONAL MATTERS</u>.

None.

## X.     <u>TRIAL LENGTH</u>.

Xtra estimates five (5) hours for their case-in-chief, cross-examination, and/or rebuttal. This estimate does not include time for *voir dire*, empanelment, openings, closings, or jury charge, which are estimated to require an additional two (2) hours of trial time.

XI.    *VOIR DIRE* **PROCEDURES.**

A.    **Proposed Jury Selection Procedure**

No specific requirements.

B.    **Names and Addresses of Potential Witnesses**

- Howard T. Weir, Washington, D.C.

- Thomas Giacchetto, Waltham, Massachusetts

- James Robert LaJoie, Salem, Massachusetts

- Harold Furash, Needham, Massachusetts

- Richard Penn, Needham, Massachusetts

- Len Nelson, Petaluma, California

- Richard Gain, Novato, California

- William Martin Tellegen, Woodland Hills, California

- Colleen Yudin-Cowan, Novato, California.

C.    **Proposed Description of the Case**

The plaintiffs or the parties who brought this case originally are Fireman's Fund Risk Management Services, Inc., Associated Indemnity Corporation and The America Insurance Company. The parties have stipulated that all of the original plaintiffs will be referred to simply as Fireman's Fund or plaintiffs for convenience. Fireman's Fund is located in Novato, California and is in the business of insurance. The original defendants are AJF Warehouse Distributors, Inc. and Xtra Corporation. I will refer to AJF and Xtra collectively as Xtra. Xtra is a global transportation leasing company. Xtra is also a plaintiff in this action because Xtra asserted certain counterclaims against Fireman's Fund.

Xtra was insured by Fireman's Fund.  Fireman's Fund issued six (6) comprehensive general liability policies to Xtra for each of the consecutive annual periods between 1978 and 1984.  These policies provided, among other things, coverage for property damage taking place during their policy periods.  These policies were also subject to a retrospective rated premium endorsement which, in essence, means that premiums are calculated based on actual losses and expenses paid by the insurer until a maximum premium amount is reached.  There is a dispute as to whether any of the subject policies were still subject to a retrospective premium calculation.  There is also a dispute regarding whether, and what amount, if any, Fireman's Fund is entitled to based on a claim Fireman's Fund paid to Xtra in 1998.  You will hear more about the retrospective premium endorsement plan as the trial continues.

By way of background, Xtra was notified in December 1990 and February 1991 by the State of Wisconsin of its potential responsibility for environmental property damage at two locations in the State of Wisconsin, known as the Highway Trailer site and the Edgerton Sand & Gravel Landfill site.  Both of these sites were located in Edgerton, Wisconsin.  Xtra tendered these claims to its insurers, including Fireman's Fund, requesting that the insurers defend Xtra and pay any settlement or judgment entered against Xtra pursuant to the terms and conditions of their respective insurance policies.  The insurers refused.

Xtra thereafter filed an insurance coverage action against its insurers, including Fireman's Fund, seeking a determination of the insurers' coverage obligations relating to the claims brought by the State of Wisconsin against Xtra.  During the pendency of the coverage action, Xtra settled the claims that had been asserted against it by the State of Wisconsin.  Xtra then sought reimbursement of its costs from its insurers in the coverage action.  Xtra eventually settled with its insurers, including Fireman's Fund, in June 1995.

Xtra was also sued in a separate action by 241 residential property owners who alleged that their private drinking wells had been damaged as a result of disposal activities at the Edgerton Sand & Gravel Landfill by various parties, including Xtra. This action was filed in 1994, and is known as the *Alderman* Action. As with the Highway Trailer and Edgerton Sand & Gravel Landfill claims, Xtra timely tendered the *Alderman* Action to its insurers, including Fireman's Fund, requesting that it defend and indemnify Xtra in the action. In response, Royal Indemnity Company, another one of Xtra's insurers, filed suit against Xtra seeking a determination whether it was obligated to defend or indemnify Xtra in the *Alderman* Action. Fireman's Fund was also named in the Royal coverage action. The parties then filed counterclaims and cross-claims against one another.

Xtra eventually settled the *Alderman* Action with the residential plaintiffs in 1996 and sought reimbursement of its defense costs and settlement payment from its insurers in the coverage action, as well as additional damages, attorneys' fees and interest relating to the insurers' refusal to honor their insuring obligations. In total, Xtra was seeking approximately $1,400,000 in actual damages from its insurers, not including punitive damages.

Following an unsuccessful mediation in September 1997 and a settlement meeting in December 1997, Xtra and Fireman's Fund reached a settlement in principal on January 26, 1998, whereby Fireman's Fund and Royal agreed to pay Xtra $900,000 in settlement of all claims asserted by Xtra in the coverage action. This settlement is memorialized in a settlement agreement executed by the parties in February 1998. The scope and effect of this settlement agreement is the subject of the current dispute.

In May 1998, shortly after this settlement had been finalized, Fireman's Fund sent Xtra's insurance broker, Frederick E. Penn Insurance Agency, a premium notice based, in part, on the

amount Fireman's Fund paid to settle the coverage action.  Specifically, Fireman's Fund's contribution to the $900,000 settlement was $437,023.75.  Pursuant to the retrospective premium endorsement plan, Fireman's Fund calculated an additional premium in the amount of $214,232, which it alleged Xtra owed based on the terms of the plan.  In essence, Fireman's Fund was now seeking return of approximately one-half of the settlement monies it had paid to Xtra as an additional premium on the settlement.  Xtra refused to pay this premium asserting that the settlement agreement resolved all claims between the parties, including any claim for a retrospective premium.

In February 2004, six years after the settlement was reached, Fireman's Fund sued Xtra seeking payment for this additional premium.  Fireman's Fund asserts that three of the insurance policies it issued to Xtra were subject to an open retrospective premium and that it expressly reserved the right to seek a premium pursuant to the express language that it included in the settlement agreement.  Fireman's Fund asserts that the settlement agreement plainly reserved Fireman's Fund's right to calculate and demand an additional premium on the settlement amount.

Conversely, Xtra asserts that the issue of a retrospective premium never arose during settlement negotiations, and that the settlement agreement reflects the parties' intention and understanding that the agreement represented the full and final settlement of all claims of any nature relating to the *Alderman* Action, including any claims for an additional premium. Notwithstanding this, Xtra also asserts that the language inserted by and relied upon by Fireman's Fund cannot reasonably be interpreted to mean that the settlement would be subject to a later retrospective premium calculation by Fireman's Fund.  In addition, Xtra asserts that if it was Fireman's Fund's intention to seek a retrospective premium, Fireman's Fund had a duty to

disclose such intention to its insured during settlement negotiations. Xtra asserts that Fireman's Fund went to great lengths not to disclose their intention to seek a retrospective premium and that Fireman's Fund's nondisclosure constitutes a willful breach of the implied covenant of good faith and fair dealing between Fireman's Fund and Xtra. Xtra also disputes the amount of the premium allegedly owed to Fireman's Fund. Xtra seeks damages from Fireman's Fund for its breach of the settlement agreement and bad faith claims handling and settlement conduct.

## XII.   XTRA'S WITNESSES.

Xtra identifies below the names, addresses, and telephone numbers of witnesses that it may call at trial, whether the testimony of any such witnesses is intended to be presented by deposition, the purpose of the testimony (*e.g.*, whether factual or expert), and for any expert witnesses a statement of the qualifications of such witnesses.

In addition, Xtra is preparing the portions of deposition transcripts that it may read and/or show to the jury at trial, regardless of whether such witness is called to testify live at trial. By so designating this testimony, Xtra does not waive any objections that it may have to the use of the same testimony by plaintiffs. Xtra reserves its rights under Fed.R.Civ.P. 32 to use deposition testimony for any other permitted purpose at trial. In the event of the unavailability at trial of a witness that Xtra may call as a live witness, or a witness that plaintiffs have represented will be available for trial as a live witness, Xtra reserves the right to substitute the deposition testimony of that witness for live testimony. Xtra also reserves the right to use any deposition for purposes of impeachment of a witness.

A.    **Fact Witnesses**

| Name | Address | Testimony Type |
|---|---|---|
| Howard T. Weir | Morgan, Lewis & Bockius LLP<br>111 Pennsylvania Avenue, N.W.<br>Washington, D.C.   20004<br>Tel:  202.739.3000 | Live |
| Thomas Giacchetto | Centrepath, Inc.<br>265 Winter Street<br>Waltham, Massachusetts   02451 | Live |
| James Robert LaJoie | 63 Cavendish Circle<br>Salem, Massachusetts  01970<br>Tel:  978.744.8684 | Live |
| Harold Furash and/or Richard Penn | c/o Frederick E. Penn Insurance Agency<br>50 Cabot Street<br>Needham, Massachusetts   02192-0444 | Live |
| Leonard Nelson | 503 Larch Drive<br>Petaluma, California  94952-2015 | Deposition Testimony |
| Richard Gain | Fireman's Fund Insurance Company<br>777 San Marino Drive<br>Novato, California   94998-8400 | Deposition Testimony |
| William Martin Tellegen | Woodland Hills, California | Deposition Testimony and/or Video Deposition |
| Colleen Yudin-Cowan | Fireman's Fund Insurance Company<br>777 San Marino Drive<br>Novato, California   94998-8400 | Live / Deposition Testimony |

B.    **Expert Witnesses**

| Name | Address | Qualifications |
|---|---|---|
| Robert N. Hughes, CPCU, ARM | Robert Hughes Associates, Inc.<br>508 Twilight Trail, Suite 200<br>Richardson, Texas   75080 | Mr. Hughes' previous disclosure of expert testimony and qualifications has been served on plaintiffs. |

C.    **Deposition Designations**

| Deponent | Defendants' Designations |
|---|---|
| Richard Gain | 4:10-5:8 |
| | 23:23-24:9 |
| | 27:21-28:7 |
| | 30:23-32:21 |
| | 33:3-24 |
| | 36:2-13 |
| | 38:13-40:3 |
| | 51:11-20 |
| | 52:3-19 |
| | 54:9-55:16 |
| | 57:4-58:13 |
| | 63:18-67:19 |
| | 70:9-14 |
| | 72:11-78:2 |
| | 94:14-95:2 |
| | 101:9-17 |
| | 102:9-12 |
| | 103:8-13 |
| | 104:8-107:17 |

| Deponent | Defendants' Designations |
|---|---|
| Colleen Yudin-Cowan | 4:10-5:3, 8-20 |
| | 6:9-15 |
| | 8:9-12, 23-9:9 |
| | 11:2-12 |
| | 12:13-15, 17 |
| | 13:16-20 |
| | 14:8-20 |
| | 15:5-13 |
| | 16:11-13, 16-23 |
| | 17:8-17 |
| | 18:5-13 |
| | 19:10-13 |
| | 21:15-22:2 |
| | 23:18-26:4, 16-20 |
| | 27:2-24 |
| | 29:2-5, 13-17 |
| | 35:11-36:4, 17-24 |
| | 39:4-7, 14-19 |
| | 45:13-24 |

| | |
|---|---|
| | 47:24-49:21 |
| | 57:22-58:5 |
| | 63:23-64-24 |
| | 65:7-72:21 |
| | 79:6-14 |

| Deponent | Defendants' Designations |
|---|---|
| Leonard Nelson | Awaiting transcript -- will supplement. |

| Deponent | Defendants' Designations |
|---|---|
| William Martin Tellegen | Awaiting transcript -- will supplement. |

## XIII.  XTRA'S PROPOSED EXHIBITS.

| Exhibit | Description | Identifier |
|---|---|---|
| | 12/21/92 letter from R.I. Sutherland to Hunter L. Prillaman regarding response to tender of Edgerton Landfill claim | Xtra 13 |
| | 12/29/94 letter from Ms. Yudin-Cowan to Mr. Martin regarding response to tender of *Alderman* Suit | Xtra 12 |
| | 03/06/95 Amended Complaint for Declaratory Judgment and Jury Demand in *Royal Indemnity Co. of Am. v. Xtra Corporation, et al.* | Xtra 14 |
| | 05/07/96 premium adjustment for allocated losses valued at 04/01/96 | |
| | 06/18/96-07/22/97 email communications between Ms. Yudin-Cowan and various | Xtra 10 |
| | Ms. Yudin-Cowan's handwritten notes | Xtra 10 |
| | 04/15/97 electronic mail communication from Mr. J. Stanton to Ms. Yudin-Cowan | Xtra 10 |
| | 05/28/97 letter from L. Nelson to H. Furash regarding premium adjustment based on losses valued at 04/01/97, with enclosures | |
| | 07/18/97 letter from H. Furash to L. Nelson regarding 04/01/97 premium adjustment | Xtra 5 |
| | 09/08/97 electronic mail communication from Ms. Yudin-Cowan to R. Gain and his 09/11/97 response | |
| | 09/97 Mediation Memorandum of Fireman's Fund Insurance Company | Xtra 15 |

| Exhibit | Description | Identifier |
|---|---|---|
| | 09/97 Mediation Statement of Defendants / Cross and Counter-Claimants, Xtra Corporation, *et al.* | |
| | 11/12/97 letter from Ms. Yudin-Cowan to R. LaJois regarding settlement offer and draft release | Xtra 16 |
| | 12/23/97 letter from W. Martin Tellegen to H.T. Weir regarding 12/11/97 settlement meeting and statutory interest issue | |
| | 12/24/97 letter from H.T. Weir to W.M. Tellegen regarding demand for fees and expenses | |
| | 01/12/98 letter from W.M. Tellegen to H.T. Weir regarding defense costs | Xtra 18 |
| | 01/27/98 letter from D. Clark to W.M. Tellegen and S.M. Streck regarding draft letter to court regarding settlement in principle | Xtra 19 |
| | 01/29/98 letter from W.M. Tellegen to H.T. Weir regarding expert witness designations | |
| | 02/03/98 letter from H.T. Weir to W.M. Tellegen and S.M. Streck requesting draft settlement agreement | |
| | 02/04/98 letter from W.M. Tellegen to H.T. Weir enclosing redline copy of settlement agreement | Xtra 20 |
| | 02/09/98 letter from H.T. Weir to S.M. Streck and W.M. Tellegen with proposed revision to draft settlement agreement | Xtra 21 |
| | 02/11/98 letter from W.M. Tellegen to H.T. Weir with further revisions to draft settlement agreement | Xtra 22 |
| | 02/19/98 letter from W.M. Tellegen to H.T. Weir | |
| | 02/98 Settlement Agreement and Release | |
| | 05/01/98 letter from L. Nelson to H. Furash regarding premium adjustment based on losses valued 04/01/98 | Xtra 4 |
| | 06/15/98 letter from H. Furash to L. Nelson, including copy of 07/18/97 letter | Xtra 5 |
| | 06/16/98 letter from L. Nelson to H. Furash regarding premium adjustment based on losses valued 04/01/98 | Xtra 6 |
| | 08/04/98 electronic mail communication from Ms. Yudin-Cowan to L. Nelson | Xtra 23 |
| | 08/18/98 electronic mail communication from L. Nelson to Ms. Yudin-Cowan | Xtra 8 |
| | 08/20/98 letter from L. Nelson to T. Giacchetto | Xtra 9 |
| | 10/06-10/14/98 recordings of messages of Evette Nelson | Xtra 24 |
| | 11/06/98 letter from T. Giacchetto to L. Nelson | |
| | 02/17/04 Complaint | |
| | 10/06/04 Amended Complaint | |

## XIV. XTRA'S PROPOSED PRELIMINARY JURY INSTRUCTIONS / *VOIR DIRE* AND VERDICT FORM.

Xtra's preliminary jury instructions are attached hereto as Exhibit "A." Xtra's proposed *voir dire* is attached hereto as Exhibit "B." Xtra's initial proposed verdict form is attached hereto as Exhibit "C."

Respectfully submitted,

AJF Warehouse Distributors Inc.
XTRA Corporation
By Their Attorneys,


*/s/ Jeffrey W. Moss*
Jeffrey W. Moss, BBO# 552421
Morgan, Lewis & Bockius LLP
225 Franklin Street, Suite 1705
Boston, Massachusetts  02110
Tel:    617.451.9700
Fax:    617.451.9710

Michael F. Healy, D.C. Bar No. 940221
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Tel:    202.739.3000
Fax:    202.739.3001

Dated:  June 23, 2006

1-BO/101502.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

———————————————————————— )
                                            )
FIREMAN'S FUND RISK MANAGEMENT              )
SERVICES, INC., ASSOCIATED INDEMNITY        )
CORPORATION, and THE AMERICAN               )
INSURANCE COMPANY,                          )
                                            )
                    Plaintiffs,             )
                                            )     CASE NO.  04-11212 NG
          v.                                )
                                            )
AJF WAREHOUSE DISTRIBUTORS INC.             )
and XTRA CORPORATION,                       )
                                            )
                    Defendants.             )
———————————————————————— )

**EXHIBIT "A"**

**XTRA'S PRELIMINARY JURY INSTRUCTIONS**

**INSTRUCTION NO. _____**

**<u>Burden of Proof -- Preponderance of the Evidence</u>**

The burden of proof rests with the person making a particular claim. In this case, Fireman's Fund has filed a breach of contract claim against Xtra, asking you to determine whether Xtra owes Fireman's Fund a premium payment based on its retrospective premium plan and the amount Fireman's Fund paid to Xtra relating to the 1998 settlement. In response, Xtra has asserted claims against Fireman's Fund alleging that Fireman's Fund committed a breach of the settlement agreement by its actions in seeking a premium based on the 1998 settlement and a breach of the covenant of good faith and fair dealing during settlement negotiations. In both situations, the party bringing the claim bears the burden of proving the validity of that claim by a fair preponderance of the credible evidence.

With respect to the breach of contract claim filed by Fireman's Fund, you can return a verdict for Fireman's Fund if, and only if, Fireman's Fund has produced evidence that proves to you that it is more likely or probable than not, that all facts necessary to make its case are true. Fireman's Fund must satisfy its burden of proof as to each element of its claim against Xtra. You cannot return a verdict against Xtra unless you are convinced that Fireman's Fund has satisfied its burden of proof.[2]

---

[2] Based on Hon. Leonard B. Sands, et al., MODERN FEDERAL JURY INSTRUCTIONS, § 73.01, Instruction 73-I; *Sargent v. Massachusetts Accident Co.*, 307 Mass. 246, 250 (1940) (preponderance of the evidence means that it is "more likely or probable" than the fact is true); *Phipps v. Barbera*, 23 Mass.App. 1, 4-5 (1986) (same); G.L. c. 106, s. 1-201(8) ("existence of the fact is more probably than its non-existence.").

Similarly, for those claims asserted by Xtra, you can return a verdict for Xtra, if, and only if, Xtra produces evidence that proves to you that it is more likely or probable than not, that all facts necessary to sustain its allegations are true. Xtra must satisfy its burden of proof as to each element of its claims against Fireman's Fund. You cannot return a verdict against Fireman's Fund on Xtra's counterclaim unless you are convinced that Xtra has satisfied its burden of proof.

**INSTRUCTION NO. _____**

<u>**Evidence**</u>

In general, the term "evidence" includes the sworn testimony of the witnesses and the exhibits admitted into the record.

Any finding of fact you make must be based on probabilities, not possibilities. While you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in the case.

In addition to the testimony of eyewitnesses and exhibits, you may consider such indirect or circumstantial evidence as the proof of a chain of circumstances pointing to the existence or nonexistence of certain facts. While you must consider all of the evidence, you need not accept all of the evidence as true or accurate.

You are the sole judges of the credibility or believability of each witness and the weight to be given to the witness' testimony. In weighing the testimony of a witness, you should consider either manner of testifying; her opportunity to observe or acquire knowledge concerning the facts about which she testified; her candor; and the extent to which she has been supported to or contradicted by other credible evidence. You may, in short, accept or reject the testimony of any witness in whole or in part.

A witness may be discredited or "impeached" by contradictory evidence, by a showing that she testified falsely concerning a material matter, or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent

with the witness' present testimony.  If you believe that any witness has been so impeached, then you can give the testimony of that witness such credibility or weight, if any, as you may think it deserves.

**INSTRUCTION NO. _____.**

**Depositions, Interrogatories, and Stipulations** [3]

      The depositions or portions of depositions read to you are to be treated as testimony under oath and are evidence in the case.

      Evidence presented to you as answers or responses to interrogatories is entitled to the same consideration that you would give to the answers or response had they been supplied by a witness testifying in open court to questions posed by the lawyers.

      You may also hear what are referred to as "stipulations of facts."  All parties are bound by any stipulations of fact that they may have entered into.  The stipulated facts are to be accepted by you as truth.  Neither party may introduce testimony to counter the stipulated facts.

---

[3]    Authority:  Fed.R.Civ.P. 32.

**INSTRUCTION NO. _____.**

**<u>Ambiguous Terms</u>**

Fireman's Fund and Xtra dispute the meaning of certain provisions of the 1998 settlement agreement. I am instructing you that language in an agreement that intelligent persons could reasonably interpret in more than one way is known as ambiguous language.[4]

This Court previously determined that the 1998 settlement agreement is ambiguous. However, since you are the sole and exclusive judges of the facts, you must determine the meaning of ambiguous provisions of the agreement.[5]

To determine the meaning of the ambiguous provisions of the agreement, you should consider the words used in the agreement, the agreement as whole, other documents relating to the transactions, what the parties said, the surrounding facts and circumstances, and the customary interpretations of certain terms or provisions provided by evidence of trade usage.[6] This additional evidence is relevant to help you to ascertain the intent and expectations of the parties where the agreement terms are ambiguous.[7] In addition, since Fireman's Fund was the party who inserted the subject language upon which it relies in support of its claim, this language should be strictly construed against Fireman's Fund as the drafter of the language.

---

[4]    *Bercume v. Bercume*, 428 Mass. 635 (1999).

[5]    *Den Norse Bank AS v. First Nat. Bank of Boston*, 75 F.3d 49 (1st.Cir. 1996).

[6]    *Id.* at 53 (stating that extrinsic evidence may include the parties' negotiations on the particular contract, their course of performance, their prior course of dealing, and trade usage in the relevant industry, in that order) (citations omitted).

[7]    *Suffolk Constr. Co. v. Lanco Scaffolding Co.*, 47 Mass.App.Ct. 726, 716 N.E.2d 130 (1999); *see also Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers*, 411 Mass. 39, 577 N.E.2d 283 (1991); *Chase Commercial Corp. v. Owen*, 32 Mass.App.Ct. 248, 588 N.E.2d 705 (1992); *Fairfield Clarendon Trust v. Dwek*, 970 F.2d 990 (1st.Cir. 1992).

**INSTRUCTION NO. _____**

**Stipulated Facts**

      In advance of the trial, the parties agreed on certain facts.  The jury is to take these facts

as established.  As I mentioned to you a moment ago, these facts have been established and must

be accepted by you as true.  The agreed facts are as follows:

      **[TO BE INSERTED.]**

**INSTRUCTION NO. _____**

**<u>Breach of Contract</u>**

       Fireman's Fund has asserted a claim against Xtra for breach of contract.  To recover, Fireman's Fund must prove to you, by a preponderance of the evidence, the existence of each of the following:  first, that there is a legally binding agreement; second, that the agreement obligated Xtra to do the things that Fireman's Fund claims; third, that Xtra failed to meet its obligations under its agreement; fourth, that Xtra has no valid defenses; and fifth, that Xtra's breach was the direct cause of loss to Fireman's Fund.[8]

       If, and only if, you conclude that Fireman's Fund has carried its burden of proof on each of these matters, you may then consider whether Fireman's Fund has also proved the existence and the amount of its damages to a reasonable certainty based on the evidence presented at trial.

       Fireman's Fund initially brought this case seeking a premium calculated on a settlement paid to Xtra in 1998.  Fireman's Fund asserts that it has a right to seek a premium based on the insurance contracts it issued to Xtra and the language contained in the settlement agreement which Fireman's Fund asserts preserved their right to seek such a premium.

       Xtra disputes Fireman's Fund's right to a premium based on the 1998 settlement.  Xtra further claims that Fireman's Fund breached the settlement agreement when Fireman's Fund later sought collection for the premium.

       Since Fireman's Fund's breach of contract claim is a jury claim, it is for you to decide. In order to prevail on its breach of contract claim, Fireman's Fund must prove the following elements by a preponderance of the evidence:

           1.        That there is a contract.

---

[8] *Singarella v. City of Boston*, 342 Mass. 385, 387 (1961); *New Boston Garden Corp. v. Baker*, 1999 Mass.Super. LEXIS 46, *9 (1999), citing *Singarella*.

2.      That Fireman's Fund performed its obligations under the contract or was excused from performance;

3.      That Xtra breached the contract; and

4.      That Fireman's Fund suffered damages as a result of the breach of contract.

### A.      **Existence of a Contract**

In this case, the parties agree that Fireman's Fund issued six (6) insurance policies to Xtra.  The parties further agree that they entered into a settlement agreement in 1998.

### B.      **Obligations of Fireman's Fund**

The parties agree that Fireman's Fund paid its share of the settlement amount under the 1998 settlement agreement.

### C.      **Obligations of Xtra**

The remaining issues are contested.  Here you must first determine whether any of the insurance policies at issue were still subject to the calculation of a retrospective premium on claims paid by Fireman's Fund.  If so, then you must next determine whether the 1998 settlement agreement allows Fireman's Fund to seek a premium from Xtra or whether the 1998 agreement, as Xtra asserts, resolved all claims between the parties.

The resolution of these issues depends upon the interpretation of both the retrospective premium plan endorsement and the settlement agreement between Fireman's Fund and Xtra. You must determine whether the terms of the retrospective premium plan permitted Fireman's Fund to calculate a premium based on the amount it paid to Xtra.  You must then determine whether the 1998 settlement agreement permits Fireman's Fund to seek a retrospective premium.

I have concluded that the settlement agreement is ambiguous, meaning that intelligent and sophisticated persons could reasonably interpret its terms in more than one way.

Our system relies on you, the jury, to determine the meaning of ambiguous provisions of the agreement. Here are general instructions on how to interpret the agreement:

1.      Agreements are to be construed so as to give effect to the intention of the parties at the time they negotiated the agreement. In this case, the relevant parties are Fireman's Fund and Xtra.

2.      You should look to the language of the agreement itself. In doing so, you must look at the agreement as a whole. The parties' obligations under the agreement cannot be determined by looking at single sentences, words or paragraphs in isolation, and interpreting them out of context.

3.      If the language of the agreement is still ambiguous after you have applied the above, you may also determine the intentions of the parties who negotiated the contract by examining their language and conduct, the objectives they sought to accomplish, and the surrounding circumstances. You may also consider the customary interpretations of certain terms and provisions in the trade or line of business in which the parties are engaged. Finally, you may consider exhibits that bear on what the intentions of the parties were at the time the contract was entered into.

Bearing these principles in mind, you must decide whether Fireman's Fund expressly reserved the right to seek a retrospective premium from Xtra and whether Xtra should be charged with notice that it was Fireman's Fund's intention to do so.

**INSTRUCTION NO. _____.**

**<u>Affirmative Defenses -- Estoppel</u>**

If you conclude that Fireman's Fund has met its burden in proving that the 1998 settlement agreement expressly reserved for Fireman's Fund the right to seek a retrospective premium from Xtra, then you must next consider the affirmative defenses that have been raised by Xtra.  In raising these defenses, Xtra must prove, by a preponderance of the evidence, that the defense applies in this case.[9]  If you conclude that any of Xtra's affirmative defenses apply, then you must enter judgment for Xtra.

Xtra has raised the affirmative defense of estoppel to Fireman's Fund's claim.  Estoppel is a legal doctrine that prevents a party from benefiting from its own wrongdoing.  Therefore, this defense is based on Fireman's Fund's conduct during the parties' contractual relationship. Xtra will prevail on this defense in the event that you find:  (1) a representation or conduct amounting to a representation by Fireman's Fund intended to induce Xtra to act or engage in a course of conduct; (2) an act or omission by Xtra resulting from Fireman's Fund's conduct or representations; and (3) detriment to Xtra as a consequence of the act or omission.[10]  If you find that Fireman's Fund had a duty to speak, and it failed to do so, then its silence may be treated as a misrepresentation.

In this case, Xtra asserts that Fireman's Fund intentionally concealed facts material to the settlement negotiations.  If you conclude that Xtra has satisfied the criteria for establishing estoppel against Fireman's Fund, you must find that Fireman's Fund is estopped from recovering damages from Xtra for any claimed breach connected to its own wrongdoing.

---

[9]    *Beaudoin v. Lenza*, 338 Mass. 798 (1959); *Realty Developing Co. v. Wakefield Ready-Mixed Concrete Co.*, 327 Mass. 535, 537 (1951).

[10]    *National Medical Care, Inc. v. Zigelbaum*, 18 Mass.App.Ct. 570, 580 (1984).

**INSTRUCTION NO. _____.**

**<u>Covenant of Good Faith and Fair Dealing</u>**

 Xtra also claims that Fireman's Fund breached what is known as the implied covenant of good faith and fair dealing by certain acts that it took relative to Xtra. The burden is on Xtra to prove these claims by a preponderance of the evidence.

 Every contract implies good faith and fair dealing between the parties to the contract.[11] This means that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the benefits under the agreement. *Id.* Based on their insurer-insured relationship, both Fireman's Fund and Xtra were obligated to deal with one another honestly and in good faith. An insurer's obligation is to deal with its insured with candor and fairness.[12] Silence by an insurer where there is a duty to speak might reasonably be interpreted as a violation of the duty of good faith that the insurer owes its insured. The duty to negotiate in good faith requires Fireman's Fund to give the interests of its insured consideration equal to that consideration given its own interest. An insurer must be mindful of the insured's best interests. So long as it acts in good faith, the insurer is not held to standards of omniscience or perfection.[13]

 An insurer cannot misrepresent pertinent facts or insurance policy provisions relating to coverages at issue.[14] In such a context, silence in the face of a duty to speak can be as harmful to an insured's interests as an outright misrepresentation. An insurer cannot "[m]isrepresent[ ] pertinent facts or insurance policy provisions relating to coverages at issue." *Id.* In such a

---

[11]  *Anthony's Pier Four, Inc. v. HBC Assoc.*, 411 Mass. 451, 473 (1991).

[12]  *Trempe v. Aetna Cas. & Sur. Co.*, 20 Mass.App.Ct. 448, 455 (1985).

[13]  *Peckham v. Continental Cas. Co.*, 895 F.2d 830, 834 (C.A. Mass. 1990).

[14]  G.L. c. 176D § 3(9).

context, silence in the face of a duty to speak can be as harmful to an insured's interests as outright prevarication.  Accordingly, good faith requires that an insurer keep its insured informed of facts material to its exposure, including information relating to coverage and settlement negotiations.

Xtra contends that Fireman's Fund acted in bad faith during the course of its handling of the *Alderman* Action and the Royal coverage action by intentionally concealing its intention to seek a premium on any settlement monies paid to Xtra to settle the case.[15]

In order for Xtra to prevail on its breach of covenant of good faith and fair dealing claim, you must find that Fireman's Fund did not act in good faith when it took the actions upon which Xtra bases its claim.  You must also find that Fireman's Fund's actions prevented Xtra from receiving the benefits of the agreement or harmed Xtra's ability to receive the benefits of the agreement.  You must also find that Xtra had a right to receive those benefits under the agreement.

If, and only if, you conclude that Xtra has carried its burden of proof on all three of these matters, you may then consider whether Xtra has also proved the existence and the amount of its damages to a reasonable degree of certainty based on the evidence presented at trial.

---

[15]    *Peckham v. Continental Cas. Ins. Co.*, 895 F.2d 830, 840 (C.A. Mass. 1990).

**INSTRUCTION NO. _____.**

**<u>Unfair or Deceptive Acts or Practices</u>**

Xtra also alleges that Fireman's Fund engaged in unfair or deceptive acts or practices as prohibited by G.L. c. 93A, § 11 and G.L. c. 176D § 3. You are being asked to decide whether Fireman's Fund engaged in acts or practices that were unfair or deceptive in the business of insurance.

The standard is a broad one, in order to allow a jury to ascertain and apply standards of fair dealing. The standards permit you to balance the equities and to consider whether Fireman's Fund took unfair advantage of Xtra and whether Xtra was defenseless or not.

An act or practice may be found to be deceptive if it possesses a tendency to deceive. An intent to deceive is not always necessary. An act or practice may be deceptive if it could reasonably cause a person to act differently from the way he or she would have acted if the truth had been known.

Massachusetts recognizes the following actions to constitute unfair methods of competition and unfair or deceptive acts or practices by insurance companies:

      –     Misrepresentation of pertinent facts or insurance policy provisions relating to coverage at issue;

      –     Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

In deciding whether an act or practice is unfair, you should consider the following two factors:

First, does the act or practice fall within some established concept of unfairness? For something to be unfair, it is not always necessary that it violate some other law or government

regulation; in fact, a practice may be lawful but still be unfair.  But whether or not the act or practice is permitted by law is a good place to start your consideration.

Second, you should ask whether Fireman's Fund's act or practice was unethical, oppressive, unscrupulous, or otherwise unconscionable.  That obviously involves you in a moral judgment about the ethics of the marketplace.  As the jury, you are the collective conscience of this community, and, as such, you are well-equipped to make that judgment.  In deciding whether the act or practice was oppressive or unscrupulous, remember that you must decide that question in the context of the commercial marketplace, where, on the one hand, people do not expect to be cheated, but, on the other hand, they should expect to deal with each other prudently and at arm's length.

In order for Xtra to recover, it is not necessary to prove that Fireman's Fund's conduct was both unfair and deceptive.  It is sufficient to permit recovery if you find that Xtra has proved that Fireman's Fund's conduct was either unfair or deceptive.

If you find that Fireman's Fund's actions were unfair or deceptive, then you are to go on to decide an additional question:  Did Fireman's Fund commit those unfair or deceptive actions willfully or knowingly?

An unfair or deceptive statement is "willful" if the speaker represents a fact to be true without knowing whether it is true or not, and with reckless disregard for whether it is true or not.  An unfair or deceptive statement is "knowing" if the speaker represents a fact to be true while knowing that it is not true.

An unfair or deceptive act is "willful" if the person intends to commit an unfair or deceptive act.  An unfair or deceptive act is "knowing" if the person, whatever his/her intent, knows that by doing so, he/she is committing an unfair or deceptive act.

**INSTRUCTION NO. _____.**

**Damages**

      If you find for Fireman's Fund on its contract claim, and if you conclude that Xtra failed to prove any of its defenses by a preponderance of the evidence, and if you find that the breach proximately caused the alleged harm, you still must determine whether any amount of damages is owed. The purpose of awarding damages is to put the non-breaching party in the position that it or it would have enjoyed in the absence of a breach.[16]

      In this case, Fireman's Fund asserts that it is entitled to a retrospective premium in the amount of $214,232. Xtra disputes that this is the proper calculation of the premium on the 1998 settlement amount. It is for you to decide the amount, if any, of damages that are owed.

      By instructing you on damages, however, I am not signaling to you whether damages are or are not appropriate in this case; that is a determination that you must make. Rather, I am only informing you as to what the law is with regard to calculating damages if, and only if, you get to that point. In addition, I instruct you that Fireman's Fund bears the burden of proving both the fact and the amount of its claimed damages by a preponderance of the evidence.[17] You may not award damages based on speculative or hypothetical assumptions. A party is required to prove any damages it alleged that it suffered with reasonable certainty.

      Similarly, if you find in favor of Xtra on its contract claim or its covenant of good faith and fair dealing claim, then you must determine whether any amount of damages are owed by Fireman's Fund to Xtra. Again, by instructing you on damages, however, I am not signaling to you whether damages are or are not appropriate in this case; that is a determination that you must

---

[16]  *Quinn Bros., Inc. v. Weeker*, 414 Mass. 815 (1993).

[17]  *Eastern Advertising Co. v. Shapiro*, 263 Mass. 228, 232 (1928) (burden of proving alleged damages is on the party claiming to be damaged).

make.  Rather, I am only informing you as to what the law is with regard to calculating damages, if, and only if, you get to that point.

I instruct you that Xtra bears the burden of proving both the fact and the amount of its claimed damages by a preponderance of the evidence.  You may not award damages based on speculation or hypotheticals.

The basic principle of contract damages is that Xtra should be put in as good a position as if the agreement had been fully performed.  Xtra is entitled to recover damages sufficient to give it the benefit of its contractual bargain, as long as such damages are reasonably proved.  In other words, Xtra is entitled to those damages that would put it in a position to obtain that which it has bargained to obtain, to be "made whole" as we say, so far as compensation in money that can be computed by rational methods upon a firm basis in fact.

Xtra may only be compensated for the damages proximately caused by Fireman's Fund's contractual breaches.  There cannot be compensation for damages caused by Xtra's own actions, inactions or omissions.  A party is only liable for those damages that flow as a natural consequence of its actions, or those damages that may reasonably be supposed to have been within the contemplation of the parties when the agreement was entered into as a probable result of breach.  Specifically, Xtra seeks damages in two categories:  lost settlement value and attorneys' fees.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
)
FIREMAN'S FUND RISK MANAGEMENT                )
SERVICES, INC., ASSOCIATED INDEMNITY         )
CORPORATION, and THE AMERICAN                  )
INSURANCE COMPANY,                                      )
                                                                 )
                                Plaintiffs,               )
                                                                 )         CASE NO.  04-11212 NG
                v.                                               )
                                                                 )
AJF WAREHOUSE DISTRIBUTORS INC.             )
and XTRA CORPORATION,                               )
                                                                 )
                                Defendants.             )
_____)


**EXHIBIT "B"**

**DEFENDANTS' PROPOSED *VOIR DIRE***

Pursuant to Fed.R.Civ.P. 47, Xtra proposes the following *voir dire* questions:

A.      **Question for Individual Jurors.**

1.      What is your full name and age?

2.      Where do you live (community or neighborhood)?

3.      Where did you grow up?

4.      Describe your education (high school), college or post-graduate study?  If college

or post-graduate, did you obtain a degree, what year, and in what area?

5.      What is your current occupation?  What is your title?  What are your job

responsibilities?

6.      For the last ten (10) years, list your employers, titles, job responsibilities and

length of employment?

7.      For an adult living in your household, what is their current occupation and employer?  To the extent that you know, list their employers for the last ten (10) years.

8.      What are your major outside interests and hobbies -- things that you spend time on outside work?

9.      Do you belong to any organizations (work-related, social, community, religious, etc.)?

10.     What types of things do you like to read (*i.e.*, books, magazines, newspapers)?

11.     Have you ever served in the military?  If yes, branch, years of service, highest rank, duties, nature of discharge?

12.     Other than what you heard in Court today, does anyone know or has anyone heard anything about this case?

13.     Are you, anyone in your family, or a close friend employed in the insurance industry?  If yes, please specify who and the nature of their work.

14.     Do you hold any opinions, positive or negative, about insurance companies in general?

15.     Have you or has anyone in your family ever owned your own business?  If yes, please describe the business, its size, and how long it was or has been in operation?

16.     Have you ever had any training or work experience in the legal / law profession?  If yes, please describe what the training or work experience was?

17.     Have you, any members of your family, or anyone close to you ever sued anyone in any type of lawsuit?  If yes, please explain.

18.     Have you, any members of your family, or anyone close to you ever been sued by anyone in any type of lawsuit?  If yes, please explain.

19.    Have you ever been a witness in a case?  If yes, please explain.

20.    Have you ever served as a juror in a lawsuit?  If yes, were you the foreperson of that jury?  Please describe the nature of the case(s) on which you served as a juror.

21.    Do you have any feelings about lawyers, judges, or the jury system in general that you believe would interfere with your ability to serve as a juror and render a fair and impartial verdict in this case?  If yes, please explain.

22.    Are there any reasons why you think you would be unable to serve as a juror in this particular case?  If yes, please explain.

23.    If you are selected to serve for this case, will you be able to render a verdict solely on the evidence presented at the trial and in the context of the law as the judge will give you in instructions, disregarding any other ideas, notions or beliefs about the law that you may have encountered in reaching your verdict?

24.    Do you know of any reason why you think that you could not serve as a juror in this case and render a just, fair, honest and impartial verdict?

## B.    Questions for the Panel

1.    The defendants in this case are AJF Warehouse Distributors, Inc. and XTRA Corporation, which I shall refer to as "Xtra."  Have you or anyone you know ever worked for AJF Warehouse Distributors, Inc. or XTRA Corporation, or done business with either of these companies?

2.    The plaintiffs in this case are Fireman's Fund Risk Management Services, Inc., Associated Indemnity Corporation, and the American Insurance Company, which I shall refer to as "Fireman's Fund."  Have any of you or anyone you know, ever worked for Fireman's Fund, know anyone who works for Fireman's Fund, or has done business with Fireman's Fund?

3.      Fireman's Fund is represented by Roger J. Donahue of the law firm, Cogavin &

Waystack.  Do any of you know anyone who works for, ever worked for, or has done business

with this law firm?

4.      Defendants are represented by Jeffrey W. Moss of the law firm of Morgan, Lewis

& Bockius LLP.  Do any of you know anyone who works for, ever worked for, or has done

business with this law firm?

5.      Do any of you know or know anything about any of the following persons who

may be witnesses called to testify in this case, either live or through a reading of prior deposition

testimony:

- Howard T. Weir, Washington, D.C.

- Thomas Giacchetto, Waltham, Massachusetts

- James Robert LaJoie, Salem, Massachusetts

- Harold Furash, Needham, Massachusetts

- Richard Penn, Needham, Massachusetts

- Len Nelson, Petaluma, California

- Richard Gain, Novato, California

- William Martin Tellegen, Woodland Hills, California

- Colleen Yudin-Cowan, Novato, California.

6.      Is there anyone who suffers from any condition or situation that would make it

difficult to give the parties and this case your full attention and fair consideration if you were

selected as a juror?  If yes, please explain.

7.      The trial is scheduled to last _____ days, from _____ to _____,

2006, from approximately _____ a.m. to _____ p.m.  Does that schedule present a hardship for

anyone?

8.      Is there anyone who believes that he or she would be unable to follow the law as I

explained it to you, apply that law to the facts that you find in this case, and render the verdict

required by the law as I explained it to you?

9.      Is there anything that you feel the Court or the parties should know about that has

not already been mentioned?

<div style="margin-left:40%">

Respectfully submitted,

AJF Warehouse Distributors Inc.
XTRA Corporation
By Their Attorneys,


*/s/ Jeffrey W. Moss*_____
Jeffrey W. Moss, BBO# 552421
Morgan, Lewis & Bockius LLP
225 Franklin Street, Suite 1705
Boston, Massachusetts  02110
Tel:    617.451.9700
Fax:    617.451.9710

Michael F. Healy, D.C. Bar No. 940221
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Tel:    202.739.3000
Fax:    202.739.3001

</div>

Dated:  June 23, 2006

1-BO/101502.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
)
FIREMAN'S FUND RISK MANAGEMENT )
SERVICES, INC., ASSOCIATED INDEMNITY )
CORPORATION, and THE AMERICAN )
INSURANCE COMPANY, )
)
               Plaintiffs, )
)    CASE NO.  04-11212 NG
    v. )
)
AJF WAREHOUSE DISTRIBUTORS INC. )
and XTRA CORPORATION, )
)
             Defendants. )
_____)

**EXHIBIT "C"**

**DEFENDANTS' PRELIMINARY PROPOSED VERDICT FORM**

I.     **PLAINTIFFS' CLAIM FOR A RETROSPECTIVE PREMIUM.**

    Question 1:

    Has Fireman's Fund proven by a preponderance of the evidence that there were

any insurance policies that were subject to an open retrospective rating premium

at the time it entered into the 1998 settlement agreement with Xtra?

          Yes _____      No _____

        **IF YOU ANSWER "YES" TO QUESTION 1, GO TO QUESTION 2.**

**OTHERWISE, GO TO QUESTION 5.**

Question 2:

Has Fireman's Fund proven by a preponderance of the evidence that the 1998

settlement agreement preserved Fireman's Fund's right to seek a retrospective

premium on the amount it paid to Xtra in that settlement?

Yes _____        No _____

**IF YOU ANSWER "YES" TO QUESTION 2, GO TO QUESTION 3.**

**OTHERWISE, GO TO QUESTION 5.**

Question 3:

Has Fireman's Fund proven by a preponderance of the evidence that it is entitled

to a premium pursuant to the retrospective premium endorsement plan on the

amount it paid to Xtra in connection with the 1998 settlement?

Yes _____        No _____

**IF YOU ANSWER "YES" TO QUESTION 3, GO TO QUESTION 4.**

**OTHERWISE, GO TO QUESTION 5.**

Question 4:

What is the total dollar amount of the retrospective premium that plaintiffs have

shown by a preponderance of the evidence that they are entitled to based on the

1998 settlement agreement?  (Write in number.)

$ _____

**GO TO QUESTION 5.**

II.   **XTRA'S CLAIMS**.

    A.   **Breach of Contract**

       Question 5:

       Has Xtra proven by a preponderance of the evidence that plaintiffs are estopped from seeking recovery of a premium from Xtra based on the 1998 settlement?

           Yes _____        No _____

       **GO TO QUESTION 6.**

       Question 6:

       Has XTRA proven by a preponderance of the evidence that plaintiffs' breached the 1998 settlement agreement by seeking a retrospective premium from Xtra?

           Yes _____        No _____

       **GO TO QUESTION 7.**

    B.   **Breach of the Implied Covenant of Good Faith and Fair Dealing**

       Question 7:

       Has XTRA proved by a preponderance of the evidence that plaintiffs breached the implied covenant of good faith and fair dealing?

           Yes _____        No _____

       **GO TO QUESTION 8.**

    C.   **Unfair Competition**

       Question 8:

       Has XTRA proven by a preponderance of the evidence that Fireman's Fund breached its duty to its insured Xtra by acting in bad faith toward Xtra when it

failed to disclose its intention to seek a retrospective premium on the 1998

settlement?

Yes _____    No _____

**IF YOU ANSWER "YES" TO QUESTION 8, GO TO QUESTION 9.**

**IF NOT, GO TO QUESTION 11.**

Question 9:

Has XTRA proven by a preponderance of the evidence that plaintiffs' bad faith

conduct was willful?

Yes _____    No _____

**GO TO QUESTION 10.**

Question 10:

Has Xtra proven by a preponderance of the evidence that it was damaged by

plaintiffs' bad faith conduct?

Yes _____    No _____

**GO TO QUESTION 11.**

Question 11:

What is the total dollar amount of damage suffered by Xtra?  (Write in number.)

$ _____

_____
Jury Foreman